UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| ANN BLUEY | ) | Case No.: |
| 9270 Beaverdam Road | ) | |
| Nanjemoy, MD 20662 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CHARLES COUNTY, MARYLAND | ) | |
| 200 Baltimore Street | ) | |
| La Plata, MD 20646 | ) | |
| | ) | |
| Serve:  Wes Adams | ) | |
|           County Attorney | ) | |
|           200 Baltimore Street | ) | |
|           La Plata, MD 20646 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff ANN BLUEY, by her undersigned counsel, and complains of

Defendant CHARLES COUNTY, MARYLAND, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking damages arising out of Defendant's discriminatory and

    retaliatory actions towards Plaintiff based on her disability that resulted in a hostile work

    environment because of Defendant's continued failure to engage Plaintiff in an

    interactive dialogue after she repeatedly requested reasonable accommodations,

    Defendant's failure to accommodate Plaintiff without any basis or undue hardship, and

    Defendant's continuous harassment, disparate discipline, and constructive discharge of

1

Plaintiff as a result of her disability and protected activities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## JURISDICTION AND VENUE

2.   This Court maintains federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a subdivision of the State of Maryland and the alleged unlawful acts took place in Maryland.

## THE PARTIES

4.   Plaintiff is an individual who resides at 9270 Beaverdam Road, Nanjemoy, MD 20662 located in Charles County.  During the relevant time period, Plaintiff was diagnosed with several permanent medical conditions that constitute disabilities within the meaning of the Rehabilitation Act.

5.   Defendant Charles County is a political subdivision of the State of Maryland with its office located at 200 Baltimore Street, La Plata, MD 20646, is the recipient of federal funding, and formerly employed Plaintiff.  Because Defendant receives federal financial assistance, including financial assistance in the Department of Social Services located at 200 Kent Street, La Plata, MD 20646, Defendant is subject to the provisions of the Rehabilitation Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   Plaintiff timely files this lawsuit within 2-years of her claims in the Complaint as this judicial district requires for actions brought under the Rehabilitation Act.[1]

---

[1] On July 11, 2018, Plaintiff filed an EEOC Charge of Discrimination and received the Notice of Right to Sue on August 5, 2019; however, Plaintiff has brought this lawsuit under the Rehabilitation Act.

# FACTS

7. In or around May 1995, Plaintiff began working for Defendant as an Income Maintenance Specialist.

8. Plaintiff's last position held was Family Investment Specialist II, Intake Unit.

9. For over 23-years, Plaintiff's job performance was always satisfactory until her separation from employment in November 2018.

## *Defendant's Knowledge of Plaintiff's Disabilities*

10. In or around 2004, Plaintiff was diagnosed with Chronic Sleep Disorder ("CSD") and severe Restless Leg Syndrome ("RLS").

11. These diagnoses are permanent medical conditions and disabilities that substantially limit Plaintiff's major life activities of sleeping, concentrating, walking, standing, and general mobility.

12. In or around 2015, Plaintiff was diagnosed with Irritable Bowel Syndrome ("IBS"), she was diagnosed with Conditioned Arousal Syndrome ("CAS") in 2016, and the following year, Plaintiff was diagnosed with bowel incontinence in 2017.

13. These diagnoses are also permanent medical conditions and disabilities that substantially limit Plaintiff's above-mentioned major life activities in addition to substantial limitation of her digestive and gastrointestinal functions.

14. Plaintiff's physical disabilities impacted her mental health and she also suffers from depression and anxiety which are disabilities that limit Plaintiff's major life activities of sleep, concentration, communication, and her cognitive and psychological functions.

15. On or about December 21, 2016, Defendant became aware of Plaintiff's disabilities because she submitted a request for medical leave under the Family Medical Leave Act

("FMLA") that requested medical leave and a modified work schedule as reasonable accommodations.

*Plaintiff's Job Duties and Requests for Reasonable Accommodations*

16. As a Family Investment Specialist II, Plaintiff's primary job duties were performing intake of applications, assessing information to determine eligibility for State programs or referrals to community resources, processing applications for food stamps and Medicaid, and conducting interviews.

17. Nishmer Burgess (FIA Program Manager) was Plaintiff's first-line supervisor; Renee Curry (FIA Supervisor I) was her second-line supervisor; and Therese Wolf (Director) was Plaintiff's third-line supervisor.

18. Plaintiff was able to perform the essential functions of her position with reasonable accommodations, i.e. flexible arrival times, medical leave for appointments and flare-ups.

19. On or about January 25, 2017, Plaintiff submitted another request for FMLA leave and her forms identified that her disabilities impacted her ability to concentrate and requested reasonable accommodations for a modified schedule (5-hour of work per day, 5 days per week).

20. Defendant failed to engage Plaintiff in an interactive dialogue or provide her with any approval or denial of her requested reasonable accommodations.

21. Plaintiff continued to perform her job duties and she took leave as needed for her disabilities by informally advising her supervisor by phone or email.

22. On or about August 16, 2017, Defendant directed Plaintiff to undergo a Workability Evaluation by the State Medical Director and on or about September 5, 2017, Plaintiff reported to the appointment as required.

*Defendant's Retaliatory and Discriminatory Discipline*
*and Failure to Accommodate Plaintiff*

23. On or about October 3, 2017, Defendant issued Plaintiff a Memorandum changing her work hours and assigned unit as a purported reasonable accommodation.

24. Defendant changed Plaintiff's work hours to 9:30am – 6:00pm and she was reassigned to the Intake Unit from Case Management.

25. The alleged reasonable accommodation was not reasonable because Plaintiff's disabilities required a flexible arrival time and intermittent leave.

26. Even so, in November 2017, Plaintiff's job performance was rated "Excellent" on her annual performance review demonstrating that her job performance for the prior year (while taking medial leave) in her previous job position was fully met.

27. On December 6, 2017, Plaintiff took leave for a doctor's appointment because her disabilities required ongoing medical treatment.

28. On January 17, 2018, Plaintiff emailed her Burgess asking for help and explained several issues (that were not within Plaintiff's control) she discovered in her cases that were causing delays and impeding Plaintiff's ability to start on other work.

29. On January 26, 2018, Plaintiff discussed work issues with Sheleen Lewis (Family Investment Specialist IV, Assistant Supervisor – FI Intake Unit) and Lewis showed Plaintiff how to perform the processes required for her assignments.

30. Lewis further divided Plaintiff's work hours into every Monday, Wednesday, Friday from 9:30am – 11:00am and again from 4:30pm – 6:00pm (assigned caseload work); Tuesday and Thursday from 9:30am – 6:00pm (assigned caseload work).

31. On February 1, 2018, less than one week after Lewis provided Plaintiff with instructions on how to perform her assignments, Defendant disciplined Plaintiff and issued a

"Counseling Memorandum – Not Completing Medical Assistance (S03) cases timely and Not Narrating on Expedited Food Stamp cases."

32. Shortly thereafter, Defendant told Plaintiff she was no longer permitted to use FMLA leave on consecutive days.

33. On February 13, 2018, Plaintiff texted Burgess and inquired about Defendant's revocation of her ability to take consecutive days of FMLA leave and explained that Plaintiff's RLS was so severe, physically debilitating, and resistant to prescribed medications which necessitated her medical appointments and leave from work.

*Plaintiff's Approved Medical Leave Followed*
*by Defendant's Refusal to Accept Medical Note*

34. On February 16, 2018, Plaintiff submitted another request for FMLA leave which was approved.

35. At that time, Plaintiff had used 204.8 hours of FMLA medical leave between August 2017 to February 9, 2018 and Plaintiff had 275.20 hours remaining or approximately 34.4 work days (8-hour).

36. From approximately March 7, 2018 to March 28, 2018, Plaintiff used approved medical leave under the FMLA as a reasonable accommodation for her disabilities.

37. On March 29, 2018, Plaintiff returned to work and submitted a doctor's note as she had in the past.

38. Shortly thereafter at 10:38am, Burgess emailed Plaintiff and advised that her doctor's note was insufficient because it only identified Plaintiff's March 27, 2018 medical appointment, it did not include the other dates that Plaintiff was out of the office (March 7-28, 2018), and it did not include a return to work date.

39. Burgess told Plaintiff to correct the alleged medical note deficiencies with a deadline by close of business that day or within approximately 6.5 hours.

40. Plaintiff replied to Burgess and complained and reported that she was being subjected to discriminatory harassment based on her disability and Defendant had failed to accommodate her disabilities.

41. Plaintiff further explained the impossibility of providing an updated doctor's note (the March 27, 2018 note was from Plaintiff's neurologist) that same day would be considering the difficulty Plaintiff had in even scheduling an appointment with him.

42. Plaintiff requested guidance and if she would be paid for being at work since her doctor's note did not have a return date (which Plaintiff had not been advised was necessary prior to return).

43. Defendant referred Plaintiff to Donna Richards (Personnel Associate II) to whom Plaintiff emailed and explained to Richards that she had submitted a doctor's note as she had done previously but it was now deemed inadequate and Plaintiff asked if she should leave work because she is not being paid.

44. Richards immediately referred Plaintiff back to Burgess.

45. Plaintiff emailed Burgess with Richards' instructions and Burgess replied and told Plaintiff to follow her previous instructions, i.e. provide an updated doctor's note by close of business which by that time, Plaintiff had 5.5 hours to meet Defendant's deadline.

46. As expected, Plaintiff was unable to provide Defendant with an updated doctor's note by the close of business on March 29, 2018.

47. Defendant's new requirements for Plaintiff's medical note and the deadline imposed on her for submitting one that adhered to those requirements was arbitrary, impossible, and

merely pretext to conceal Defendant's discriminatory and retaliatory animus towards

Plaintiff based on her disabilities and requests for reasonable accommodations.

*Defendant's Refusal to Permit Plaintiff to*
*Return to Work and Continuing Failure to Accommodate*

48. Despite Plaintiff being available and able to return to work and perform the essential

   functions of her position, Defendant refused to permit her to return from March 30, 2018

   until May 9, 2018.

49. Instead, on April 12, 2018, Defendant sent Plaintiff a letter instructing her to appear for a

   Workability Evaluation on April 24, 2018.

50. On April 23, 2018, Plaintiff's counsel notified Defendant that she had retained legal

   representation and requested that HR contact Plaintiff's attorney regarding the status of

   her employment.

51. Defendant never responded to Plaintiff's counsel's calls, letters, or provided a response to

   the requested information (status of Plaintiff's employment).

52. On May 3, 2018, Plaintiff's attorney emailed Defendant and requested reasonable

   accommodations on her behalf.

53. Defendant never responded to Plaintiff's request for reasonable accommodations.

54. Shortly thereafter, Defendant sent a letter to Plaintiff that required she submit a medical

   note covering her absences from March 7-28, 2018 (that Defendant had previously

   approved) with a deadline of May 8, 2018 (Defendant never advised Plaintiff that it

   would extend the previous deadline of March 29, 2018) and if she failed to do so,

   Plaintiff's employment would be terminated as an alleged "voluntary resignation."

55. On May 8, 2018, Plaintiff submitted a medical note that Defendant deemed "sufficient."

*Plaintiff's Return to Work*

56. On May 9, 2018, Plaintiff met with management regarding "expectations" and was subjected to unwarranted hostility, impatience, and intimidation.

57. During the meeting, Defendant instructed Plaintiff that she was prohibited from using the word "FMLA" and that no one would be speaking with her attorney about Plaintiff's request for reasonable accommodations.

58. Defendant also instructed Plaintiff that if she needed reasonable accommodations, she was only permitted to request Leave Without Pay ("LWOP").

59. Defendant's instructions were discriminatory and retaliatory based on Plaintiff's disabilities and requests for reasonable accommodations.

60. Defendant's refusal to speak with Plaintiff's counsel regarding her requests for reasonable accommodations and its refusal to consider any reasonable accommodation other for Plaintiff than LWOP is contrary to state and federal laws.

61. Defendant's actions intimidated Plaintiff and threatened her job so she complied as directed.

*Plaintiff's Requests for Reasonable Accommodations*
*Per Defendant's Limitations and Discipline*

62. On May 9, 10, 21, and 22, 2018 and throughout June 2018, Plaintiff requested reasonable accommodations (LWOP) as directed by Defendant.

63. Defendant denied all of Plaintiff's requests for reasonable accommodations.

64. There is no evidence that granting Plaintiff's requests for reasonable accommodations would result in any undue hardship to Defendant.

65. On May 22, 2018, Burgess issued Plaintiff a Counseling Memo based on "Undocumented Sick Leave" that stated Plaintiff was "very close to having exhausted all of [her] sick

leave and must be aware that if another instance of undocumented absence while still

maintaining a zero or near zero, sick leave balance, [Plaintiff] will be required to certify

all sick leave usage, commonly referred to as the 'one day sick slip' requirement."

66. Defendant's Counseling Memo was not credible because Plaintiff had requested LWOP

as directed as a reasonable accommodation so any near zero balance of her sick leave

would be irrelevant and Defendant already required Plaintiff submit medical

certifications for her leave usage.

67. On June 6, 2018, Curry issued Plaintiff a Memorandum based on "Medical Certification

Requirement" that stated Plaintiff was absent on June 5, 2018 for medical reasons and did

not provide medical documentation on June 6, 2018 (the date of the Memorandum) and if

no documentation is received by close of business that day, it would be considered

"undocumented" and Plaintiff would be placed on the "one-day sick slip" requirement

effective June 7, 2018.

68. On or about June 22, 2018, Curry submitted a "Recommendation for Reprimand, Ann

Bluey" to Wolf that accused Plaintiff of violating Defendant's call-in policy.

69. Defendant's call-in policy required immediate supervisors to be contacted within 30-

minutes of employee's scheduled report time to advise of intention for that day.

70. Curry identified that Plaintiff texted her on May 29, 2018 at 9:46am that her alarm did

not go off which was a purported violation because her schedule is 9:00am – 5:30pm.

71. This is false, Plaintiff's schedule was 9:30am – 6:00pm, and only evidenced additional

acts of discrimination and retaliation based on Plaintiff's disabilities and protected

activity.

72. Curry also identified June 5 and 22, 2018 that Plaintiff allegedly notified her late and

arrived late where Plaintiff again timely notified her within the 30-minutes.

73. All of the dates Plaintiff contacted her supervisor about a late arrival were because of her disability and Defendant's allegations against Plaintiff were unjustified and only further evidence of discriminatory and retaliatory actions based on her disabilities and requests for reasonable accommodations.

*Defendant Terminates Plaintiff's Employment*

74. On August 14, 2018, Defendant sent Plaintiff a letter stating that she is unable to perform the essential job duties of her position (Family Investment Specialist II) in which she is currently employed and therefore "it has become necessary to consider freeing [Plaintiff's] position."

75. Defendant's letter provided Plaintiff with two options: (1) State Retirement and Pension System of Maryland; or (2) Resignation and Reinstatement.

76. Defendant's letter detailed that if Plaintiff resigned, she could be in "good standing" and eligible to submit employment applications to the State of Maryland.

77. Defendant gave Plaintiff a deadline of September 24, 2018 to "voluntarily separate" or it would be "necessary for [Defendant] to take appropriate steps to vacate [Plaintiff's position.]"

78. Defendant's allegations were false – Plaintiff was able of performing the essential functions of her position with reasonable accommodations.

79. In or around November 2018, Defendant terminated Plaintiff's employment when she was forced to involuntarily retire based on Defendant's refusal to grant her requests for reasonable accommodations and continuing discriminatory and retaliatory actions.

80. Defendant's conduct was unjustified and directed towards Plaintiff because of her disabilities and requests for reasonable accommodations.

## COUNT 1

*(Violation of the Rehabilitation Act – Failure to Accommodate)*

81. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

82. Plaintiff is an individual with disabilities under Section 504 of the Rehabilitation Act and its implementing regulations.

83. Plaintiff was otherwise qualified under 29 U.S.C. § 794 to perform the essential functions of her position.

84. Defendant received and continues to received federal financial assistance and is therefore a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

85. Defendant denied Plaintiff's requests for reasonable accommodations without any evidence of undue hardship.

86. By and through its conduct, Defendant violated the Rehabilitation Act, codified at 29 U.S.C. § 794(d), by failing to engage in the interactive process and denying Plaintiff reasonable accommodations for her disabilities.

87. Defendant's actions were intentional, reckless, and/or malicious.

88. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 2

*(Violation of the Rehabilitation Act – Disability Discrimination)*

89. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

90. By and through its conduct, Defendant violated the Rehabilitation Act by discriminating against Plaintiff and constructively discharging her from her employment because of her disability.

91. Defendant's actions were intentional, reckless, and/or malicious.

12

92. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 3

*(Violation of the Rehabilitation Act – Retaliation)*

93. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

94. Plaintiff engaged in protected activities by requesting reasonable accommodations and complaining about discrimination and harassment.

95. By and through its conduct, Defendant violated the Rehabilitation Act by subjecting Plaintiff to disparate treatment and discipline and constructively discharging her in retaliation for requesting reasonable accommodations.

96. Defendant's actions were intentional, reckless, and/or malicious.

97. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and/or punitive damages.

## COUNT 4

*(Violation of the Rehabilitation Act – Hostile Work Environment)*

98. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

99. Defendant had knowledge of Plaintiff's disabilities and protected activities.

100. By and through its conduct, Defendant violated the Rehabilitation Act by subjecting Plaintiff to a hostile work environment based on her disabilities and requests for reasonable accommodations.

101. Defendant's actions were intentional, reckless, and/or malicious.

102. As a result, Plaintiff incurred damages, including lost wages and benefits, pain and suffering, emotional distress, mental anguish, and punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant on all Counts, and award Plaintiff reinstatement; lost wages and benefits; compensatory damages in the amount of $300,000, or in such other amount as is determined at trial for pain and suffering and emotional distress; liquidated damages; pre- and post-judgment interest; costs; attorney's fees; injunctive and declaratory relief; punitive damages; and any such other relief as just and proper.

Date: October 30, 2019

Respectfully submitted,
Alan Lescht & Associates, P.C.
By: */s/ Rani Rolston*
Rani Rolston (Bar No. 17402)
1825 K Street N.W., Suite 750
Washington, D.C. 20006
T: 202.463.6036
F: 202.463.6067
rani.rolston@leschtlaw.com
*Counsel for Plaintiff*

14