IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                    |   |                              |
|------------------------------------|---|------------------------------|
|                                    | : |                              |
| ANN BLUEY                          |   |                              |
|                                    | : |                              |
| v.                                 | : | Civil Action No. DKC 19-3163 |
|                                    | : |                              |
| CHARLES COUNTY, MARYLAND           |   |                              |
| and STATE OF MARYLAND              | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination suit brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, are the motions to dismiss filed by Defendants Charles County, Maryland ("Charles County") and the State of Maryland ("Maryland"). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Charles County's motion to dismiss will be granted, and Maryland's motion to dismiss will be granted in part and denied in part. Plaintiff's motion for extension of time to file a response to Maryland's motion to dismiss will be granted.

**I. Background**

Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiff. Ms. Bluey began work for the Charles County Department of Social Services ("Social Services") around May 1995.

Defendant Charles County, Maryland ("Charles County"), is a political subdivision of the Defendant State of Maryland ("Maryland").[1]  Plaintiff's most recent position was "Family Investment Specialist II, Intake Unit."  In this position, her superiors were Nishmer Burgess ("Ms. Burgess"), as her first-line supervisor; Renee Curry ("Ms. Curry"), as her second-line supervisor; and ultimately Therese Wolf ("Ms. Wolf"), Director of Social Services and her third-line supervisor.

Plaintiff alleges that her job performance (in previous positions) was always "satisfactory" during the twenty-three years of employment until her "separation" from employment in November 2018.  This level of performance was achieved despite a 2004 diagnosis with Chronic Sleep Disorder ("CSD") and "severe" Restless Leg Syndrome ("RLS").  She alleges these are permanent medical conditions and disabilities that "substantially limit Plaintiff's major life activities of sleeping, concentrating, walking, standing, and general mobility."  Around 2015, she was also diagnosed with Irritable Bowel Syndrome ("IBS"), in 2016 with Conditioned Arousal Syndrome ("CAS") and in 2017 with bowel incontinence.  These conditions also "substantially limit" her

---

[1]  Defendants receive federal financial assistance, particularly within Social Services.  Accordingly, they fall within the ambit of the protections of the Rehabilitation Act which expressly abrogates sovereign immunity. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 491 (4th Cir. 2005).

major life activities and are a "substantial limitation" on her digestive and gastrointestinal functions.  In turn, these physical conditions are also alleged to have impacted her mental health: she suffers from depression and anxiety which similarly affect her "sleep, concentration, [and] communication" as well as her "cognitive and psychological functions."

Her employer[2] allegedly first became aware of these disabilities around December 21, 2016 when Ms. Bluey first submitted a request for medical leave under the Family Medical Leave Act ("FMLA") and for a modified work schedule as a reasonable accommodation for her disabilities.  Plaintiff reports that she was able to fulfill the "essential functions of her position with reasonable accommodations, i.e. flexible arrival times, medical leave for appointments and flare-ups." On January 25, 2017, Plaintiff submitted another request for FMLA leave and reasonable accommodations in the form of a modified schedule of five, five-hour workdays.  Ms. Bluey asserts that her employer, in its response, failed to engage in an "interactive dialogue" with her or to provide her with an approval or denial on this request. Nevertheless, she reports continuing to take leave "as needed,"

---

[2] There is a dispute about Plaintiff's official employer.  She alleges in the amended complaint that Charles County and the state of Maryland were "joint employers."

while "informally" advising her supervisor of this by phone or email.

Nonetheless, on August 16, 2017, her employer directed plaintiff to take part in a "Workability Evaluation" by the State Medical Director around September 5, 2017, to which she promptly reported.  On October 3, 2017, her employer issued Plaintiff a Memorandum that changed her terms of employment as a "purported reasonable accommodation": new 9:30 AM to 6:00 PM work hours and a reassignment into the Intake Unit from Case Management.  She alleges these changes did not constitute reasonable accommodations.

In her new role, Ms. Bluey reports initial challenges that were back logging her progress with cases, followed by a particularly challenging period with her disabilities.  She asked for help from an Assistant Supervisor on January 26, 2018, but on February 1, 2018, she nevertheless received a "Counseling Memorandum" for a failure to complete her "Medical Assistance" cases on time and for "Not Narrating on Expedited Food Stamp Cases."  "Shortly thereafter," she was told by her employer she was no longer allowed to use FMLA leave on consecutive days.  On February 13, 2018, Ms. Bluey attempted to inquire why she was told this, particularly as her RLS had gotten "so severe, physically debilitating, and resistant to prescribed medications."  As she explained, her condition would necessitate several medical

appointments and leave from work.  On February 16, 2018, Ms. Bluey submitted another request for FMLA leave which was approved.

In total, Ms. Bluey estimates that she used 204.8 hours of FMLA medical leave between August 2017 and February 9, 2018 and so claims to have had 275.20 hours remaining.  From March 7 to March 28, 2018, she again used "approved medical leave under the FMLA as a reasonable accommodation for her disabilities."  Upon her return on March 29, 2018, she submitted a doctor's note to explain this absence "as she had in the past."  However, later that morning, Ms. Burgess emailed her to tell her the note was insufficient in only identifying the day of her actual medical appointment, March 27, 2018, and in not including a "return to work date."  She was given only until the close of that business day to correct the alleged deficiency, which she failed to do.[3]

Ms. Bluey alleges that, as a result, she was not allowed to return to work from March 30 until May 9, 2018.  Further, on April 12, 2018, her employer sent her a letter to appear at another Workability Evaluation on April 24, 2018.  Although Plaintiff subsequently retained counsel and notified her employer of the representation, her employer did not respond to any of Ms. Bluey's counsel's calls, letters, or requests for information.  These

---

[3] Ms. Bluey contends she complained at the time that such a sudden demand was discriminatory harassment and re-raised her complaint that her employer had failed to provide her reasonable accommodations.

communications included an additional request for reasonable accommodations sent on her behalf on May 3, 2018. Not long thereafter, Plaintiff's employer sent her a letter requesting a note to cover her absences with a deadline of May 8, 2018, although she alleges it was already approved. Her employer threatened her with "voluntarily resignation" if she failed to meet the deadline. However, on May 8, 2018, Ms. Bluey submitted a medical note that her employer deemed "sufficient," and she was allowed back to work on May 9, 2018.

Ms. Bluey asserts that her return to work was met with "unwarranted hostility, impatience, and intimidation." On her first day back, "management" met with her regarding "expectations." She was told she could no longer use the word "FMLA" on any request, but instead should only request Leave Without Pay ("LWOP"). She was also told that no one would be responding to her attorney's request for reasonable accommodations. She asserts that she only complied out of a sense of intimidation and fear for her job. Accordingly, on May 9, 10, 21, and 22, 2018 and "throughout" June 2018 she requested "reasonable accommodations" in the form of LWOP only. Her employer denied these requests. However, it appears she took (unexcused) leave anyway as, on May 22, 2018, Ms. Burgess issued her a counseling memorandum on "Undocumented Sick Leave." It informed her that she had almost exhausted her sick leave and that any

additional "undocumented" absences would lead to the imposition of the more restrictive "'one day sick slip' requirement."  On June 6, 2018, Ms. Curry issued her another memo stating that she was absent on June 5, 2018 but had not provided medical documentation. She also submitted a "Recommendation for Reprimand, Ann Bluey" on June 22, 2018, accusing Plaintiff of violating her employer's "call-in policy."  She disputes that she was late in reporting her late arrival on either occasion in question.

Finally, on August 14, 2018, Plaintiff's employer sent her a letter alleging that she was unable to perform the essential duties of her position, and therefore "it has become necessary to consider freeing [Plaintiff's] position."  To avoid outright termination, her employer let her decide between retiring and taking part in the Maryland Pension system or resigning with the option for reinstatement elsewhere if she decided by September 24, 2018. Finally, on November 2018, Ms. Bluey was "forced to involuntarily retire," although it unclear whether she chose this option, or it was chosen for her.

After filing a complaint with the EEOC and receiving a Right to Sue Notice, Plaintiff filed a complaint solely against Charles County on October 30, 2019, containing four claims : (1) Failure to Accommodate, (2) Disability Discrimination, (3) Retaliation, and (4) Hostile Work Environment. (ECF No. 4).  Charles County answered this complaint with a motion to dismiss on December 9,

2019, arguing that Ms. Bluey was an employee of the State of Maryland, not the County. (ECF No. 3). In response to this motion, Plaintiff filed an amended complaint on December 23, 2019, naming Maryland as an additional Defendant and reasserting the claims against both Defendants. (ECF No. 4).[4] On the same day, she also filed a response to Charles County's motion to dismiss. (ECF No. 5). Charles County filled a renewed motion to dismiss based on the amended complaint. (ECF No. 9).

Maryland filed its own motion to dismiss on March 10. (ECF No. 13). On March 24, Plaintiff filed a motion for an extension for its opposition to this motion, which was granted on the same day. (ECF No. 14). On April 14, Ms. Bluey again sought an extension from the court, but before the court approved or denied this motion, she filed oppositions to both Charles County's renewed motion to dismiss and Maryland's motion to dismiss. (ECF No. 17, 18). Subsequently Maryland replied on May 1, 2020, (ECF No. 19),[5]

---

[4] It is hard to discern from the amended complaint where each count begins and ends. The amended complaint simply sets out a chronological series of events. It then incorporates all these facts by reference into a series of bald legal and factual assertions that mostly restate the necessary elements of each claim. (ECF No. 4, ¶ 83-104). Plaintiff does set out some helpful summarizations of the amended complaint in her opposition, although the opposition refers to events beyond the four corners of the complaint at times. (ECF No. 18).

[5] No opposition to the requested extension was filed, and there was no prejudice from the brief delay. The motion will be granted.

and Charles County replied on June 15 (ECF No. 20).  That same day
Charles County also filed a supplement to its motion to dismiss,
adopting Maryland's argument that Ms. Bluey failed to demonstrate
she was "otherwise qualified" under the Rehabilitation Act.  (ECF
No. 21).  On June 10, 2020, Ms. Bluey filed her final opposition.
(ECF No. 24).  On August 7, 2020, Charles County filed its final
reply.  (ECF No. 27).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the
sufficiency of the complaint.  *Presley v. City of Charlottesville*,
464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need
only satisfy the standard of Fed.R.Civ.P. 8(a), which requires a
"short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  At this stage, all
well-pleaded allegations in a complaint must be considered as true,
*Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual
allegations must be construed in the light most favorable to the
plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176
F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*,
7 F.3d 1130, 1134 (4th Cir. 1993)).  "Rule 8(a)(2) still requires
a 'showing,' rather than a blanket assertion, of entitlement to
relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n. 3
(2007).  In evaluating the complaint, unsupported legal
allegations need not be accepted.  *Revene v. Charles Cty. Comm'rs*,

882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Motions to Dismiss

### A.   Charles County

Defendant Charles County moves to dismiss all claims against it under Fed.R.Civ.P. 12(b)(6).  It argues that it is neither Ms. Bluey's sole employer, nor did it jointly employ her with Maryland, and thus she did not state a claim under the Rehabilitation Act. (ECF No. 9-1, at 3-6).  As Charles County argues in its Reply, (ECF No. 20, at 1), Ms. Bluey implicitly concedes that Charles County was not her sole employee; in her Opposition to the motion to dismiss, (ECF No. 17), she does not dispute that she was an

10

employee of the State, as per Maryland State law. (ECF No. 9-1, at 3) (citing Md. Hum. Servs. Code § 3-201) (instructing the Maryland Department of Human Resources to create a local department in each county to be named after the county). The only question in dispute is whether she was jointly employed by Maryland and Charles County.

The amended complaint fails to state facts sufficient to establish that Charles County was a joint employer of Ms. Bluey. As Charles County correctly points out, (ECF No. 20, at 2), only three paragraphs of Ms. Bluey's entire amended complaint allege that the County is her joint employer. (ECF No. 4, ¶¶ 3, 18, 82). In two of these paragraphs, Plaintiff puts forward the bald allegations that "both [Defendants] were joint employers of Plaintiff" and "Defendants jointly employed Plaintiff." (ECF No.4, ¶¶ 3, 82). Thus only ¶ 18 of the amended complaint contains any factual allegations:

> Wolf, appointed by Defendant Charles County Commissioners with approval of Secretary of Human Services and advice of the Social Services Board, was at all times relevant to this Complaint, an employee of Defendant Charles County, Maryland and controlled Plaintiff's employment and was involved in the actions complained of herein.

(ECF No. 4, ¶18). These allegations implicitly contend that Charles County and Maryland were her joint employers because Ms. Wolf, her boss, Director, and third-line supervisor, was appointed by the Charles County Commissioners. By her own admission,

however, the state Secretary of Human Services exercises final approval over this appointment.

Charles County is correct to point to *Butler v. Drive Auto. Indus. Of Am., Inc.* 793 F.3d 404, 414 (4th Cir. 2015), as the test for joint employment in analyzing claims under the Rehabilitation Act. *Barnett v. Unif'd. Serv. Univ. of the Health Sci.*, No. DKC 10-2681, 2011 WL 3511049 at *7 (D.Md. August 9, 2011) (citing *Garrett v. Phillip Mills, Inc.*, 721 F.2d 979, 982 (4th Cir. 1983)); *see also Butler*, 793 F.3d at 414 (condensing *Garrett*'s eleven part test into a nine part one). Its primary focus is whether a purported employer has control, responsibility and oversight of an employee.

Plaintiff fails to state facts necessary to establish Charles County is a joint employer of Ms. Bluey. The assertion that it "controlled" Plaintiff's employment is a bald assertion of a precondition to joint employment that is not supported by her complaint. Although Ms. Bluey posits that Ms. Wolf is her third-line supervisor, the only place that she makes an appearance in *any* of the alleged misconduct of her employer is in accepting the "Recommendation for Reprimand, Ann Bluey" from Ms. Curry. (ECF No. 4, ¶ 69). Even in imputing all the conduct of supervisors Ms. Burgess and Ms. Curry to Ms. Wolf and, by extension, her employer, Ms. Bluey fails to show how Charles County exerted any control over either Ms. Wolf or Ms. Bluey. Ms. Bluey points to no "day-

12

to-day supervision" of her work or training that she can link to
Charles County. *Butler*, 793 F.3d at 414. Similarly, she does not
allege a single fact to suggest it took any part in the decision
to "free" her post. (ECF No. 17, at 13). The very connection
between Ms. Wolf and Charles County is tenuous, at best. As
Charles County persuasively argues, "The simple fact that Ms. Wolf
is appointed by the County, does not make her a County employee,
especially when the State, through the Secretary of Human Services,
had the final say over her appointment." (ECF No. 20, at 2).

Plaintiff's request for an "abbreviated" discovery period
with leave to file an amended complaint as it relates to Charles
County as Ms. Bluey's joint employer cannot save these claims.
(ECF No. 17, at 12). As Plaintiff herself points out, a claim
based on joint employment may only move forward at this stage where
the facts must give rise to a "reasonable inference" that the two
entities are not "dissociated with respect to a worker's
employment." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 771 (4th Cir.
2016). Further, such an inference is only appropriate "if" the
allegations point to a "factor" of joint employment (i.e.
"supervision and control") and "demonstrate that the person or
entity has a substantial role in determining the terms and
conditions of a worker's employment." *Id.* at 771.

Here, no inference of joint employment is reasonable, even in
construing the complaint liberally. Ms. Bluey makes no allegations

that go to the nine factors of joint employment, and the only allegation connecting Charles County to the conduct in question is the appointment of Ms. Bluey's boss and third-line supervisor. (ECF No. 18). Even if further discovery were to unveil a comingling of funding sources in paying Plaintiff's or Ms. Wolf's salary or benefits, (ECF No. 17, at 13), Ms. Bluey would still fail to plead facts that allow her claims against Charles County to go forward. Her request for discovery and for subsequent leave to amend on this question is denied. All claims must be dismissed as against Charles County for failure to state a claim.

### B. Maryland

Defendant Maryland puts forth four bases for its motion to dismiss: (1) Plaintiff's allegations that pre-date her initial complaint are time-barred,[6] "(2) Ms. Bluey is not a 'qualified' employee under the Rehabilitation Act; (3) Ms. Bluey has failed to state a claim for discrimination and retaliation where she suffered

---

[6] The motion to dismiss identified December 27, 2017 as the cut-off date for claims, (ECF No. 13-1, at 1, 7), possibly relying on the date the summons was issued for the amended complaint. (ECF No. 6). Confusingly, however, it also later identified December 27, 2018 as the day "Ms. Bluey initiated this suit" and therefore argued for barring all allegations before December 27, 2016. (ECF No. 13-1, at 8). Plaintiff correctly points out that the two-year period applies from the original date of filing October 30, 2019, thus barring any claims before October 30, 2017 only. (See ECF No. 18, at 10 n. 2). Maryland ultimately accepts this date. (ECF No. 19, at 2).

no adverse actions; and (4) Ms. Bluey has failed to state a claim for hostile work environment."  (ECF No. 13-1, at 1-2).

### 1.   Time-barred Claims

Both parties agree that Plaintiff's claims as to her employer's conduct occurring before October 30, 2017 are time-barred.[7]  In particular, Ms. Bluey's allegations that (1) her employer failed to engage with her "in an interactive dialogue" in providing requested reasonable accommodations after her January 25, 2017 request, (ECF No. 4, ¶ 21), and (2) that the accommodations they ultimately did provide her were unreasonable, (*Id.*, ¶ 26) are time-barred.  As stated by Ms. Bluey in her Reply, four allegations of failure to accommodate nonetheless survive, which Maryland accepts (ECF No. 19, at 2): (1) failure to provide reasonable accommodation in revoking the use of consecutive FMLA leave (ECF No. 18, at 10-11); (2) refusal to allow Ms. Byrd to return to work and continued failure to respond to accommodation requests between March 30 and May 9, 2018 (ECF No. 4, ¶¶ 32-34); (3) prohibition on Ms. Bluey's use of the word FMLA in leave and

---

[7] With no express statute of limitations for Rehabilitation Act claims, Maryland argues in its motion to dismiss that the most analogous local time limitation is the two-year period under the Maryland Fair Employment Act ("MFEPA").   (ECF No. 13-1, at 7).  Ms. Bluey does not challenge this point, (ECF No. 17, at 10), and caselaw in our district supports this outcome.  *See e.g. Ott v. Md. Dep't. of Pub. Safety and Corr. Services*, No. RBD-16-3394, 2017 WL 3608181 at *4 (D.Md. August 22, 17) (citing *Bales v. MD. Jud./Admin. Office of the Cts.*, JFM-15-3293, 2016 WL 6879902, at *7 (D.Md. Nov. 22, 2016)).

reasonable accommodation requests (ECF No. 4, ¶¶ 57-62); and (4) denial of requests for excused medial leave on May 9, 10, 21 and 22, 2018, and "throughout" June 2018) (ECF No. 4, ¶¶ 63-64).[8] Starting with Defendants issuing a counseling memorandum to Plaintiff on February 1, 2018, (ECF No. 4, ¶ 32-104), virtually all the conduct alleged to be discriminatory, retaliatory, and contributing to a hostile work environment remains in issue.

## 2. Otherwise Qualified Employee

Plaintiff makes a plausible claim that she is an "otherwise qualified employee" under the Rehabilitation Act. As this court has said before:

> A plaintiff seeking recovery for violation of . . . Section 504 of the Rehabilitation Act must establish that: (1) he has a disability, (2) he is *otherwise qualified to receive the benefits of a public service, program, or activity*, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability.

*Innes v. Bd. of Regents of the Univ. System of Md.*, No. DKC 13-2800, 2015 WL 1210484 at *4 (D.Md. March 16, 2015) (citing *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 498 (4th Cir.2005) (emphasis added). An "otherwise qualified"

---

[8] The Reply also alleges a failure to accommodate when Defendants "wrote Plaintiff up for alleged tardiness in June 2018," but this section of the complaint seemingly states discrimination or retaliation, not a failure to accommodate. (ECF No. 18, at 10-11) (citing ECF No. 4, ¶¶ 69-74).

employee "must be able to 'perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue' with reasonable accommodation." *Nanette v. Snow*, 343 F.Supp.2d 465 (D.Md. 2004) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1993)). Moreover, *Tyndall* made clear that the plaintiff ultimately bears the burden of making this affirmative showing, *Tyndall*, 31 F.3d at 213 (citing *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990)). *Tyndall* also established that a "regular and reliable level of attendance is a necessary element of most jobs," as Maryland points out in its motion to dismiss. 31 F.3d at 213 (citing *Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir. 1994)); (ECF No. 13-1, at 9). Whether an employee is "otherwise qualified" is a question of fact as is the underlying question of what constitutes a "reasonable accommodation." *Pandazides v. Va. Bd. Of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994) (collecting cases).

Maryland argues that Ms. Bluey failed to state facts sufficient to show she was "otherwise qualified" under the Rehabilitation Act. (ECF No. 13-1, at 1-2). It asserts that Ms. Bluey has admitted an attendance record in her amended complaint showing that she is "incapable of maintaining consistent attendance at work." (ECF No. 13-1, at 9). It points to two periods in which Ms. Bluey was absent from work by her own admission, from March 7 to 28, 2018, and again from March 30 to

May 8, 2018. (*Id.*).   However, this second absence was at the command of her employer, as Maryland outright concedes, (*id.*), and Ms. Bluey contends in her amended complaint that the first absence was initially approved, before her documentation for these absences was later brought under scrutiny. (ECF No. 4, ¶ 55). Maryland also points to the (presumed) absences for which Ms. Bluey admits she unsuccessfully attempted to secure approval through LWOP requests at various dates in May and during June.  (ECF No. 13-1, at 9).  But Ms. Bluey's actual track record is almost beside the point, as her complaint alleges she *would* have been otherwise qualified had her employer accommodated her in a reasonable way. Such assertions are satisfactory at this stage.[9]

As to this broader question, Ms. Bluey sufficiently states enough facts to show she could have both been generally present and fulfilled her essential functions had her requests for reasonable accommodations been approved.  (ECF No. 4, ¶¶ 34, 74, 79); (ECF No. 18, at 12) (arguing the amended complaint alleges that "nearly half" of her absences were due to her employer's

---

[9] Plaintiff argues that attendance is not a presumptively essential part of a typical job, but this is unavailing. (ECF No. 18, at 11-12).   Ms. Bluey asserts that not all jobs require attendance but cites only a single case before the Equal Employment Opportunity Commission. (ECF No. 18, at 10-11) (citing *Corrina M.*, No. 0120150102 at *3 (E.E.O.C. Nov. 16, 2017)). This case is not persuasive. It suggests only that the Commission "*may*" not treat attendance as an essential job function in limited circumstances. *Corrina M.*, No. 0120150102 at *3.

refusal to allow her back, and the remaining were a result of the failure to accommodate her disabilities).   In her amended complaint, she asserts that the absences and other instances of alleged tardiness throughout March, May, and June, 2018 could have been *entirely avoided* had her employer provided her reasonable accommodations she claims were necessary: flexible arrival time and intermittent leave.  (ECF No. 4, ¶¶ 26, 74).[10]

Policy and procedural considerations cut against dismissal of these claims.   Ms. Bluey highlights how this court has said, "it would be a perverse reading of disability law to deny an employee a reasonable accommodation so that she cannot work, and then turn around and point to those absences as evidence that she is not qualified to perform her job."   (ECF No. 18, at 12) (citing *Johansson v. Prince George's County Public School*, No. DKC 13-2171, 2014 WL 3345054 at *7 (July 7, 2014)).  Equally importantly, Maryland is implicitly asking the court to weigh in on the merits of Ms. Bluey's factual assertions that she was able to fulfill the basic and essential duties of her job (i.e. with the requested five-hour workdays), which is inappropriate at this stage.

---

[10] Although the first alleged failure to accommodate on October 3, 2017 is time-barred, Ms. Bluey says she re-raised her continued need for accommodation of her disabilities on March 29, 2018 in complaining of her employer's *ongoing* failure to provide it.  (ECF No. 4, ¶ 41).

Plaintiff bolsters her argument here with a highly positive performance review from the same employer in "her previous job position,"[11] even while taking necessary medical leave. (ECF No. 4, ¶ 27). Beyond just the bald factual assertion that she was able to "perform the essential functions of her position," (ECF No. 4., at 12), Ms. Bluey points to a job performance review that rated her "Excellent" in November 2017. (ECF No. 4, ¶ 27).[12] She alleges this review occurred almost a full year after her employer became aware of her condition with her initial request for FMLA leave on December 21, 2016, (ECF No. 4, ¶ 15), a year after her diagnosis with CAS, and around two years after her diagnosis with IBS. (ECF No. 4., ¶ 12). She has plausibly alleged that but for Maryland's failure reasonably to accommodate her, she would have

---

[11] Ms. Bluey does not make clear what she was required to do in this prior position in "Case Management," or if this position is at all like her most recent post. (ECF No. 4, ¶ 25, 27). However, her most recent job as a "Family Investment Specialist II, Intake Unit" entailed the intake of applications, presumably for state support programs, and determining individuals' "eligibility for State programs or referrals to community resources, processing applications for food stamps and Medicaid, and conducting interviews." (ECF No. 4, ¶ 8, 16).

[12] In its motion to dismiss, Charles County asserts "any and all of Ms. Bluey's claims that *relate* to events that occurred prior to October 31, 2017" are time-barred. (ECF No. 9-1, at 7) (emphasis added). However, as Maryland correctly states, only *allegations* prior to that date are time-barred. (ECF No. 19, at 2). The positive review does not involve any alleged misconduct on the part of Ms. Bluey's employer. It goes only to Ms. Bluey's ability to work well with the proper accommodations.

at least fulfilled the essential functions of her role, if not continue to perform at a high level.

In sum, Maryland's arguments here are premature. It also points to what it contends is Ms. Bluey's own physician's determination that she was unable to perform the essential functions of the job that was included in a letter to Ms. Bluey on August 14, 2018. (ECF 13-1, at 5). However, as Plaintiff correctly states in her Reply, such extrinsic evidence cannot be considered on a motion to dismiss. (ECF 18, at 12-13). As Maryland itself points out, such an outside document can only be considered when it is "integral to and explicitly relied on" in the complaint. (ECF 13-1, at 5); *see also Philips*, 190 F.3d at 609. The letter is not integral to the allegations of the complaint. In fact, Ms. Bluey wholly rejects the allegations set out in the letter. (ECF No. 4, ¶ 79). As stated, whether Ms. Bluey is otherwise qualified is a factual determination, and so the issue cannot be foreclosed at this stage.

### 3.  Adverse Action

Ms. Bluey's opposition to Maryland's motion to dismiss points to nine instances of conduct in her amended complaint that she claims constitute adverse actions for her retaliation and discrimination claims. (ECF No. 18, at 14). Of these nine, five

qualify under both the discrimination and retaliation standards as adverse employment actions, while four fail.

As this court has said: "[t]o establish discrimination under the Rehabilitation Act, Plaintiff must demonstrate that he: (1) has a disability; (2) is otherwise qualified for the job in question; and (3) *suffered an adverse employment action* solely because of his disability." *Rock v. Hugh*, 819 F.Supp.2d 456, 470 (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)) (emphasis added) (finding a plaintiff with alcoholism did not suffer an adverse employment action in claiming disability discrimination, failure to accommodate and retaliation). Adverse employment actions include ultimate employment decisions (*i.e.* termination), as well as any discriminatory act or harassment that alters the terms, conditions, or benefits of employment. *Von Gunten v. Md.*, 243 F.3d 858, 864 (4th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006).

Charges of retaliation under the Rehabilitation Act have a lower threshold as to what constitutes adverse action than discrimination claim. As Maryland correctly asserts, the Rehabilitation Act has expressly adopted the Americans with Disabilities Act's ("ADA") anti-retaliation provisions as per 29 U.S.C. § 12203.  29 U.S.C. §791(f).  In turn, the Fourth Circuit has made clear that Title VII retaliation standards apply equally

to ADA retaliation claims. *S.B. ex rel. A.L. v. Bd. Of Educ. Of Harford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016) (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001)).   A "materially adverse" action in this context means only that it "well might" be enough "to dissuade[] a reasonable worker from making or supporting a charge of discrimination." *S.B. ex rel*, 819 F.3d at 78 (citing *Burlington*, 548 U.S. at 54, 68).

That said, employees are expected to endure normal work requirements, which include evaluations and critiques.  "'There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action.' Rather, it is a mediate step, which, if relied upon for a true adverse employment action (e.g., discharge, demotion, etc.,) becomes relevant evidence." *Settle v. Balt. Cty.*, 34 F.Supp.2d 969, 1010 (D.Md. 1999) (internal citation omitted) (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 442 (7th Cir.1996)); *see also Scott v. Lori*, No. ELH-19-2014, 2020 WL 3833129 at *18 (D.Md. July 8, 2020) (collecting cases).

Here, Maryland is correct on two fronts: counseling memoranda are not considered disciplinary actions under Maryland code (ECF No. 13-1, at 12) (citing State Pers. & Pens. Art. §11-107(a)), and a referral to a workability evaluation is allowable under the ADA, and by extension the Rehabilitation Act, as an accepted feature of the workplace.  (*Id.*, at 13) (citing 42 U.S.C. § 12112(d)(4)(B) of

the ADA) (stating "[a] covered entity may conduct voluntary medical examinations" and "[a] a covered entity may make inquiries into the ability of an employee to perform job-related functions"); *see also Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (finding a medical examination does not violate the ADA when, *inter alia*, "the employee's ability to perform essential functions of the job is impaired."); *Hanna P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) (citing *Kroll*, 763 F.3d at 623 favorably).

In her opposition to Maryland's motion to dismiss, Ms. Bluey focuses on various portions of the complaint that she argues state adverse actions with respect to both her discrimination and retaliation claims. (ECF No. 18 at 14). These allegations are that Maryland: (1) "*repeatedly* and *without justification* denied her requests for reasonable accommodations;" (2) on February 1, 2018, issued her a "Counseling Memorandum" reprimanding her for her work product less than two months after she took leave for a doctor's appointment[13] (ECF No.4, ¶¶ 28-32); (3) sometime later in February 2018, "arbitrarily" decided Ms. Bluey could not take FMLA leave on consecutive days (ECF No. 4, ¶ 33); (4) on March 29, 2018, "arbitrarily required Plaintiff to submit additional medical

---

[13] Ms. Bluey asserts that this memo came only "weeks after she requested reasonable accommodations and took medical leave," but the amended complaint shows the gap between her leave and the letter was nearly two months and there is no mention of a prior request for reasonable accommodation proximate to that date. (ECF No. 18, at 14); *see* (ECF No. 4, ¶¶ 28-32).

documentation with six hours' notice" for leave that Ms. Bluey asserts was already approved (ECF No. 18, at 14) (citing ECF No. 4, ¶¶ 38-48); (5) on April 12, 2018, sent a letter to Ms. Bluey to appear for a "Workability Evaluation" on April 24, 2018 (ECF No. 4, ¶ 50); (6) from March 30, 2018 through May 9, 2018, refused to allow her back to work, to explain the status of her employment, or respond to further requests for reasonable accommodations made by her attorney on her behalf. (ECF No. 4, ¶¶ 49-54); (7) on May 9, 2019, informed her, through her supervisors, that she was only permitted to request LWOP, which she claims constitutes discrimination and retaliation for her requests and that she says forced her compliance by intimidating her and threatening her job (ECF No. 4, ¶¶ 57-62); (8) on June 22, 2018, submitted a "Recommendation for Reprimand" to Ms. Bluey falsely accusing her of violating her employer's call-in policy. (ECF No. 4, ¶¶ 69-72);[14] and finally (9) on August 14, 2018 constructively discharged Ms. Blue via letter. (ECF No. 4, ¶¶ 75-79). Implicitly, this final claim also incorporates her eventual termination "[i]n or

---

[14] As noted, the amended complaint also mentions that on May 22, 2018, her first-line supervisor Nishmer Burgess issued another counseling memo to inform Ms. Bluey that she had nearly exhausted her sick leave. (ECF No. 4, ¶ 66). However, Ms. Bluey apparently concedes that this memo itself does not constitute an adverse employment action by failing to highlight it in her Opposition. (ECF No. 18, at 14).

around November 2018" as outlined in her amended complaint. (ECF No. 4, ¶ 80).

While some of these claims state an adverse action as to both discrimination and retaliation, some are not independently actionable as such and must be dismissed.

As to the actionable conduct: Maryland's alleged and repeated denials of Ms. Bluey's request for reasonable accommodations,[15] and its commands to not request consecutive days of FMLA leave, and then not at all, all altered her terms of employment. The denials caused absences and alleged poor performance. Her inability to use FMLA exhausted her allowable leave for medical reasons and so implicitly impaired her ability to work effectively with her disabilities. All these also qualify as adverse actions for retaliation in that such conduct would dissuade a reasonable person in Ms. Bluey's shoes from continuing to seek accommodations. As to her sixth claim, her temporary removal from March 30 to May 9 is both a material change to her employment and one that would dissuade her from future medical leave or accommodation requests. Finally, Ms. Bluey's effective discharge is the quintessential adverse employment action under either standard. Claims (1), (3), (6), (7) and (9), as outlined above, all state discrimination and retaliation claims as adverse actions.

---

[15] The first timely incident of which occurred on March 29, 2018 (ECF No. 4, ¶ 41).

Conversely, a number of these claims fail to make out independent adverse actions as simply reprimands and requirements of the workplace. The counseling memoranda and "Recommendation for Reprimand" constitute such standard workplace evaluations and so are not adverse actions. Ms. Bluey also alleges that her failure to meet the "new [and allegedly discriminatory] requirements" demanded of her on March 29 led to her employer's refusal to allow her back and to refer her to a Workability Evaluation instead. (ECF No. 4, ¶ 48-50). Maryland concedes they expressly relied on the results of the Workability Evaluation in terminating Ms. Bluey, but this does not make the demand for documentation or the referral itself actionable.[16] Aggravating as such conduct may be to Ms. Bluey, none themselves altered the conditions or terms of Ms. Bluey's employment, nor should they be considered to independently dissuade a reasonable person to seek accommodations. Claims (2), (4), (5) and (8), as outlined above, fail to state a claim for either discrimination or retaliation in failing to constitute adverse actions under either standard.

### 4. Hostile Work Environment

Ms. Bluey alleges conduct that is severe or pervasive enough to state a hostile work environment claim. To establish a hostile

---

[16] That said, this evaluation, like the memorandum and recommendation for reprimand, may be relevant to whether the ultimate decision to fire her was retaliatory or discriminatory at a later stage.

work environment claim a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. General Motors Corp.*, 274 F.3d 169, 177 (4ᵗʰ Cir. 2001) (applying Title VII "methodology" to an ADA plaintiff); *Berkner v. Blank*, No. DKC 12-1390, 2013 WL 951562 at *5 (D.Md. March 11, 2013) (applying the test in *Fox* to a hostile work environment claim under the Rehabilitation Act). Maryland's motion to dismiss puts the fourth element in dispute. (ECF No. 13-1, at 15-16).

The test for this claim is an objective one which asks if a reasonable person would perceive the workplace as hostile. *Fox*, 247 F.3d at 178. In turn the court must consider a number of factors in judging the severity and pervasiveness of the conduct, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Id.* "A merely unpleasant working environment" does not suffice. *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4ᵗʰ Cir. 1996). A hostile workplace is one so "permeated with 'discriminatory intimidation, ridicule, and

insult'" it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Blank, FSV v. Vinson*, 477 U.S. 57, 64-65 (1986)). "The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761 (4th Cir. 2003).

As mentioned, Ms. Bluey seems to treat the incidents as all contributing to a hostile work environment in incorporating her entire recitation of events into Count 4. (ECF No. 4, at 14). She does, however, summarize several events she says contribute to this claim in her Opposition, but without reference to specific portions of the amended complaint. (ECF No. 18, at 17). In particular she re-highlights: (1) the period from March 30 to May 8 in which she was "forced out of work;" (2) how she was forced to use unpaid leave instead of "paid leave"[17] through accommodations; (3) that she was issued disciplinary reprimands and counseling "when she had not done anything wrong"; (4) that her employer "repeatedly" denied her requests for reasonable accommodations or

---

[17] This phrase is a bit misleading as FMLA leave itself is unpaid leave. However, presumably, Ms. Bluey means she would not have had to request unpaid leave in these instances (whether it be LWOP or FMLA) had she been reasonably accommodated.

didn't respond at all; (5) "arbitrary and unrealistic requirements for submission of medical documentation"; and (6) the "illegal medical exam" she was "subjected" to in April, 2018, even though there was "no question as to whether she could perform the essential functions of her job." (*Id.*).

These allegations, all occurring within a sufficiently short period of time, are sufficiently pervasive and serve to form a plausible claim for a hostile work environment.   If taken independently they may seem like "isolated personnel decisions" that Ms. Bluey simply disagreed with and not severe or pervasive harassment.  *Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009). However, viewed collectively, the allegations in question took place between February 2018 and August 2018, with the situation apparently reaching a fever pitch with her to return on May 9, 2018.  (ECF No. 4, ¶ 57).  While not involving physical threats, Ms. Bluey alleges these actions form a concerted effort meant to intimidate and steer her away from both the accommodations and leave to which she was entitled.   Viewed in the light most favorable to the plaintiff, her allegations demonstrate an abusive workplace that materially altered the conditions of her employment, not one that is merely unpleasant.  Ms. Bluey states a claim of a hostile work environment and Maryland's motion to dismiss these claims is denied.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant Charles County will be granted.  The motion to dismiss filed by Defendant Maryland will be granted in part and denied in part.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

31